**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

DEANNA N. SMITH,

                    Plaintiff,

v.

TRANS UNION, LLC, and
MK PAYMENT SOLUTIONS, INC.
d/b/a MONEYKEY,

                    Defendants.

Civil Action No.: 26-145

**COMPLAINT**

**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT**

1.     Plaintiff Deanna N. Smith brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), against Defendant Trans Union, LLC ("Trans Union"), a consumer reporting agency, and Defendant MK Payment Solutions, Inc. d/b/a MoneyKey ("MoneyKey"), a furnisher of information to consumer reporting agencies.

2.     This case arises from the Defendants' failure to accurately report and investigate Plaintiff's account with MoneyKey.

3.     MoneyKey has admitted in writing to federal regulators that an "unprecedented technical issue" in its billing system caused duplicate charges to be processed against Plaintiff's bank account.

4.     Despite this admission, MoneyKey continues to report Plaintiff's account to Trans Union with an incorrect, derogatory "collection" status, and Trans Union continues to publish this inaccurate information on Plaintiff's consumer report.

5.     Plaintiff timely paid her MoneyKey account on March 11, 2025.

6. MoneyKey's billing system error—not Plaintiff's conduct—caused the subsequent payment confusion and reporting of inaccurate information, specifically, that her account had a "collection" status due to missed payments.

7. Plaintiff disputed the inaccurate information with Trans Union.

8. Trans Union responded on or about August 2, 2025, making minor updates but refusing to correct the inaccurate collection status.

9. As a result, Trans Union continues to report inaccurate, damaging information about Plaintiff.

10. Plaintiff—who had otherwise excellent credit and who was severely impacted by the double charge on her account and the related negative reporting—seeks actual damages, statutory damages, punitive damages, attorney's fees, and costs for the Defendants' willful and/or negligent violations of the FCRA.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiff's claims under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

12. This Court has jurisdiction to issue declaratory relief under 28 U.S.C. § 2201.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and the Defendants conduct business in this District.

## PARTIES

14. Plaintiff Deanna N. Smith is a natural person and citizen of the State of Hawaii, residing in Waipahu, Honolulu County, Hawaii.

15. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

16. Defendant Trans Union, LLC ("Trans Union") is a Delaware limited liability company engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports.

17. Trans Union is a "consumer reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

18. Trans Union regularly conducts business throughout the United States, including in the State of Hawaii and in this District.

19. Defendant MK Payment Solutions, Inc. d/b/a MoneyKey ("MoneyKey") is, upon information and belief, a corporation organized under the laws of Delaware, with its principal place of business in Wilmington, Delaware.

20. MoneyKey is in the business of providing consumer credit products, including lines of credit, and services accounts originated by Capital Community Bank, a Utah chartered bank.

21. MoneyKey reports information about consumer accounts to consumer reporting agencies, including Trans Union. As such, MoneyKey is a "furnisher of information" within the meaning of the FCRA, 15 U.S.C. § 1681s-2.

22. MoneyKey regularly conducts business throughout the United States, including in the State of Hawaii and in this District.

## FACTUAL ALLEGATIONS

### *Background*

23. On or about September 3, 2021, Plaintiff opened a line of credit account with MoneyKey (the "Account"). The original credit limit was $1,100.00.

3

24.     Plaintiff maintained the Account in good standing, making regular payments as required.

### *MoneyKey's Admitted Billing Error*

25.     On or about March 11, 2025, Plaintiff made a payment of $1,060.00 to MoneyKey to satisfy her Account balance.

26.     On the same date, March 11, 2025, MoneyKey's billing system erroneously charged Plaintiff's bank account a second time for $1,060.00—a duplicate charge that Plaintiff did not authorize.

27.     The duplicate charge caused Plaintiff's bank account to become overdrawn, resulting in multiple overdraft and non-sufficient funds ("NSF") fees totaling at least $120.00.

28.     Plaintiff immediately contacted MoneyKey to report the duplicate charge.

29.     However, MoneyKey initially claimed it could not see the duplicate charge in its system.

30.     Plaintiff subsequently filed a dispute with her bank, Bank of Hawaii, regarding the duplicate charge.

31.     On March 14, 2025, Bank of Hawaii issued a provisional credit of $1,060.00 to Plaintiff's account while it investigated the dispute.

32.     On March 21, 2025, MoneyKey directly refunded $1,060.00 to Plaintiff's bank account via ACH credit.

33.     By letter dated March 24, 2025, Bank of Hawaii informed Plaintiff that because the merchant (MoneyKey) had credited her bank account on March 21, 2025, the provisional credit would be reversed on March 31, 2025.

34.     On March 31, 2025, Bank of Hawaii debited Plaintiff's bank account $1,060.00 to reverse the provisional credit (issued on March 14, 2025).

### *MoneyKey Places Account in Collections Despite Billing Error*

35.     Beginning in March 2025, despite its own billing error causing the payment error and having timely received the payments of the owed balance, MoneyKey reported that Plaintiff's Account was in collection status.

36.     On March 25, 2025, fearing negative credit reporting, Plaintiff made an additional payment of $1,030.00 ($1,005.00 plus $25.00) to MoneyKey in an attempt to resolve the Account and avoid further collection activity.

37.     Plaintiff disputed the March 25, 2025 payment in the amount of $1,030.00 with Bank of Hawaii as Plaintiff understood that MoneyKey's billing error had caused her to make payments beyond what was legitimately owed on the Account.

38.     Bank of Hawaii issued a provisional credit to Plaintiff's account of $1,030.00 on April 4, 2025.

39.     Plaintiff also disputed the remaining March 11, 2025 charge of $1,060.00 (that had been reversed by Bank of Hawaii).

40.     On April 7, 2025, Bank of Hawaii issued a provisional credit of $1,060.00.

41.     On April 10, 2025, MoneyKey sent an email to Plaintiff confirming that her account was closed and in good standing with no negative information about the account reported to the credit bureaus.

42.     Less than an hour after the first April 10, 2025 communication, however, MoneyKey sent Plaintiff an additional email, asserting Plaintiff now had a balance owing of $1,005.00.

43. By letter dated April 21, 2025, Bank of Hawaii informed Plaintiff that the provisional credit of $1,060.00 had been made permanent.

44. On May 12, 2025, Plaintiff paid $1,030.00 to MoneyKey after it represented to her a balance was owed following her disputes of the duplicate charges.

45. By letter dated June 16, 2025, Bank of Hawaii informed Plaintiff that the provisional credit of $1,030.00 had been made permanent.

### *MoneyKey's Admission of Error*

46. Plaintiff filed complaints with the Consumer Financial Protection Bureau ("CFPB") on March 14, 2025 and April 1, 2025 regarding MoneyKey's billing error and subsequent collection activity.

47. By email dated April 9, 2025, MoneyKey responded to Plaintiff's CFPB complaint and admitted: **"Due to an unprecedented technical issue, we can confirm that two payments of $1,060.00 were processed using your payment card and received on March 12, 2025."**

48. MoneyKey's own admission establishes that its billing system error—not any conduct by Plaintiff—caused the duplicate charge and subsequent confusion regarding payment credits and debits on the Account.

49. Despite admitting its error, MoneyKey reported, and continues to report, the Account to Trans Union with a derogatory collection status beginning in the month of the double billing and spanning for months after the Account was fully paid.

50. Notably, MoneyKey never reported that Plaintiff had missed her March 2025 payment (which she did not), nor did it present any sequence of late payments by which the account could legitimately be placed in a collection status.

51.     MoneyKey never noted the Account as 30, 60, 90, or 120 days late, nor could it be so marked as Plaintiff had timely made payments.

### *Inaccurate Credit Reporting*

52.     On or about May 28, 2025, Plaintiff discovered that her Trans Union credit report contained inaccurate information regarding the MoneyKey Account.

53.     Specifically, Trans Union reports the MoneyKey Account with the following erroneous Pay Statuses:

- March 2025 – current or paid as agreed (simultaneously noted as a Paid Collection Account);

- April 2025 – current or paid as agreed and Closed by Consumer (not in Collections);

- May 2025 – in Collections;

- June 2025 – in Collections with $1,030 amount paid;

- July 2025 – in Collections;

- August 2025 – in Collections;

- September 2025 – in Collections;

- October 2025 – in Collections and noted as a Paid Collection Account; and

- November 2025 – in Collections and Closed by Consumer.

54.     This reporting is inaccurate and misleading.

55.     Plaintiff's Account was never legitimately in collection status.

56.     Plaintiff's Account was not in Collections in March, April, May, June, July, August, September, October, or November 2025.

57.     Plaintiff did not make a payment of $1,030 in June 2025 to MoneyKey.

7

58.     Plaintiff did not close the Account in November 2025, nor was the Account ever a Paid Collection Account.

59.     MoneyKey incorrectly reported the Account as if it were in collections due to its own admitted billing system error.

60.     Plaintiff timely paid $1,060.00 on March 11, 2025 to satisfy her Account. That payment preserved the good standing status of the Account.

61.     After the payment and credit disputes were resolved and MoneyKey requested payment to resolve the Account, MoneyKey timely received such payment from Plaintiff.

62.     Any incorrect "delinquency" or "collection" status resulted solely from MoneyKey's technical error duplicating the charge, not from Plaintiff's failure to pay, and such status incorrectly represents the true status of the Account.

63.     The MoneyKey Account appears only on Plaintiff's Trans Union credit report. It does not appear on Plaintiff's Equifax or Experian credit reports.

### *Plaintiff's Dispute to Trans Union*

64.     Plaintiff submitted an online dispute to Trans Union regarding the inaccurate MoneyKey Account information.

65.     Trans Union received Plaintiff's dispute and was obligated under 15 U.S.C. § 1681i to conduct a reasonable reinvestigation of the disputed information.

66.     Upon information and belief, Trans Union transmitted notice of Plaintiff's dispute to MoneyKey, and MoneyKey was obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of the disputed information.

67.     On or about August 2, 2025, Trans Union completed its purported reinvestigation and sent Plaintiff the results.

68.    Trans Union's dispute results stated: "We investigated the information you disputed and updated: Date Updated; Rating; Historical Trended Data."

69.    However, Trans Union failed to correct the inaccurate collection status. The Account continued to report as "Account Paid in Full; was a Collection."

70.    Trans Union's reinvestigation was unreasonable. Trans Union failed to conduct any meaningful review of the circumstances surrounding Plaintiff's Account, including MoneyKey's admission that its own billing error caused the payment confusion.

71.    MoneyKey's investigation, if any, was likewise unreasonable.  Despite having admitted to federal regulators that its "unprecedented technical issue" caused duplicate charges, MoneyKey failed to correct or modify its inaccurate reporting to Trans Union.

72.    Upon information and belief, Trans Union continues to report the MoneyKey Account with the inaccurate collection status as of the date of this Complaint.

### ***Damages***

73.    As a direct and proximate result of Defendants' negligent and willful actions, conduct, and omissions, including publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic) including but not limited to:

(a) Bank overdraft and NSF fees caused by MoneyKey's duplicate charge;

(b) Credit-related damages (including but not limited to loan denials and other lost credit opportunities);

(c) Damage to Plaintiff's credit reputation;

(d) Emotional distress, embarrassment, humiliation, and mental anguish; and

(e) Loss of time and effort expended in attempting to correct the inaccurate information.

74.     The impact of Defendants' misconduct on Plaintiff was particularly severe because Plaintiff suffered loss of employment just prior to the duplicate charge that caused her account to be overdrawn and severely damaged her credit at the time she needed it most.

**COUNT I**
**Violation of 15 U.S.C. § 1681e(b)**
**(Against Defendant Trans Union)**

75.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76.     Section 1681e(b) of the FCRA, 15 U.S.C. § 1681e(b), requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

77.     Trans Union violated Section 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information in Plaintiff's consumer file and consumer reports, including by reporting that Plaintiff's MoneyKey Account "was a Collection" when that status was caused by MoneyKey's admitted billing error, not by Plaintiff's failure to pay.

78.     Trans Union's violations were willful. Trans Union knew or should have known that its procedures for assuring accuracy were inadequate, particularly when Plaintiff disputed the inaccurate information and provided notice that MoneyKey had admitted to causing the payment error.

79.     In the alternative, Trans Union's violations were negligent.

80.     Plaintiff has suffered actual damages as a result of Trans Union's violations, and is entitled to recover such damages, as well as statutory damages, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**Violation of 15 U.S.C. § 1681i**
**(Against Defendant Trans Union)**

81.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82.     Section 1681i(a)(1)(A) of the FCRA, 15 U.S.C. § 1681i(a)(1)(A), requires consumer reporting agencies, upon receiving a consumer dispute, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and to "record the current status of the disputed information, or delete the item from the file" before the end of the 30-day period beginning on the date the dispute is received.

83.     Section 1681i(a)(4) of the FCRA, 15 U.S.C. § 1681i(a)(4), requires consumer reporting agencies to "review and consider all relevant information submitted by the consumer" in conducting any reinvestigation.

84.     Section 1681i(a)(5)(A) of the FCRA, 15 U.S.C. § 1681i(a)(5)(A), requires consumer reporting agencies to "promptly delete" or "modify" disputed information that is found to be inaccurate or incomplete or cannot be verified.

85.     Trans Union violated Section 1681i by:

(a) Failing to conduct a reasonable reinvestigation of Plaintiff's dispute;

(b) Failing to review and consider all relevant information submitted by Plaintiff;

(c) Failing to delete or modify the inaccurate collection status designation on Plaintiff's MoneyKey Account; and

11

(d) Continuing to report inaccurate information following Plaintiff's dispute.

86.     Trans Union's violations were willful. Trans Union knew or should have known that its reinvestigation procedures were inadequate and that the disputed information was inaccurate.

87.     In the alternative, Trans Union's violations were negligent.

88.     Plaintiff has suffered actual damages as a result of Trans Union's violations, and is entitled to recover such damages, as well as statutory damages, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**Violation of 15 U.S.C. § 1681s-2(b)**
**(Against Defendant MoneyKey)**

89.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

90.     Section 1681s-2(b)(1) of the FCRA, 15 U.S.C. § 1681s-2(b)(1), requires that upon receiving notice of a dispute from a consumer reporting agency, a furnisher of information shall:

(a) Conduct an investigation with respect to the disputed information (§ 1681s-2(b)(1)(A));

(b) Review all relevant information provided by the consumer reporting agency (§ 1681s-2(b)(1)(B));

(c) Report the results of the investigation to the consumer reporting agency (§ 1681s-2(b)(1)(C));

(d) If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the furnisher provided the information (§ 1681s-2(b)(1)(D)); and

(e) If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified, modify, delete, or permanently block the reporting of that item of information (§ 1681s-2(b)(1)(E)).

91. Upon information and belief, Trans Union notified MoneyKey of Plaintiff's dispute.

92. MoneyKey violated Section 1681s-2(b) by:

(a) Failing to conduct a reasonable investigation of Plaintiff's dispute;

(b) Failing to review all relevant information, including its own admission that an "unprecedented technical issue" caused the duplicate charges and payment confusion;

(c) Failing to report accurate results of its investigation to Trans Union; and

(d) Failing to modify or delete the inaccurate collection status that resulted from its own billing error.

93. MoneyKey's violations were willful. MoneyKey knew that its own billing system error caused the payment confusion, having admitted as much to federal regulators, yet it failed to correct its inaccurate reporting to Trans Union.

94. In the alternative, MoneyKey's violations were negligent.

95. Plaintiff has suffered actual damages as a result of MoneyKey's violations, and is entitled to recover such damages, as well as statutory damages, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Deanna N. Smith respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

A.  Actual damages in an amount to be proven at trial;

B.  Statutory damages;

C.  Punitive damages;

D.  Reasonable attorney's fees and costs;

E.  Pre-judgment and post-judgment interest as allowed by law;

F.  Declaratory and injunctive relief as appropriate; and

G.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 27, 2026

Respectfully submitted,

*/s/Mateo Caballero*
Mateo Caballero
Caballero Law LLLC
P.O. Box 235052
Honolulu, Hawai'i 96823
T: 808-600-4749
E: mateo@caballero.law

*/s/ Evan S. Rothfarb*
Evan S. Rothfarb
*Pro Hac Vice Motion Forthcoming*
Schlanger Law Group, LLP
60 East 42nd Street, 46th Floor
New York, NY 10165
T: 212-500-6114
E: erothfarb@consumerprotection.net

*Attorneys for Plaintiff*

14